UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAZE D. THOMAS,

                Plaintiff,

-v.-

TWITTER CORPORATE OFFICE and
NATIONAL TWITTER HEADQUARTERS,

                Defendants.

22 Civ. 5341 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Caze Thomas, proceeding *pro se*, brings claims against Defendants National Twitter Headquarters and Twitter Corporate Office, otherwise known as Twitter, Inc., and referenced herein as "Twitter."[1] Plaintiff seeks recourse for a myriad of alleged harms inflicted upon him by Twitter's decision to remove Plaintiff's posts, also referenced herein as "tweets," from its platform. For the reasons set forth below, the Court grants Twitter's motion to dismiss Plaintiff's Complaint in full without leave to amend.

---

[1] Neither "Twitter Corporate Office" nor "Twitter National Headquarters" is a unit of Twitter, Inc., the entity at which Plaintiff's Complaint is presumably directed. Assuming as much, Twitter, Inc. defends this action. (*See* Dkt. #44 at 3 n.5).

The Court acknowledges that between the filing of Defendants' opening and reply submissions, Twitter, Inc. changed its name to X Corp. (*See* Dkt. #60 at 9). However, for consistency, the Court will refer to the entity as Twitter in this Opinion.

## BACKGROUND[2]

### A. Factual Background

The instant dispute arises out of Twitter's alleged suspension of Plaintiff's Twitter account @Zay_Cipher and his subsequent efforts to recover the contents of that account. (*See generally* Compl.). According to Plaintiff, Twitter's suspension of his account rendered "up to 3[,]500 [of his] [p]ost[s] [f]rom the date of suspension" inaccessible to him. (Compl. 6). Further, "[a]fter [p]roperly [r]equesting, and [p]roviding the necessary documents for his entire [T]witter Data Archive from 2009-[p]resent, the Plaintiff has not properly [r]eceived his intellectual properties [f]rom [T]witter." (*Id.* at 5). While acknowledging that "Twitter has sent [Plaintiff] emails with links to his entire [T]witter Archive," Plaintiff alleges that these links have all been "defective." (*Id.*).

Plaintiff's Complaint makes two other allegations, both of which relate to the contents of Plaintiff's now-defunct Twitter archive. *First*, on November 10 of an unidentified year, Plaintiff "posted [his] music on [Y]outube and [T]witter." (Compl. 5). Two days later, popular recording artist Billie Eilish and her brother posted music allegedly infringing upon the work that Plaintiff had

---

[2] This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In this Opinion, the Court maintains Plaintiff's citing and spelling conventions as they are presented in his submissions.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #44), to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #58), and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #60).

posted. (*Id.*). Specifically, Plaintiff claims that Eilish and her brother copied the "[r]hythm, [s]tyle, harmonie, tone, [and] melodie" of his music. (*Id.*). Indeed, "other artist[s] on [Universal Music Group's] roster" have infringed on Plaintiff's music, too. (*Id.*).

*Second*, Plaintiff alleges that Elon Musk's "Model Pi Phone" — which "us[es] the Pi symbol" — infringes upon Plaintiff's "Pi Face handheld and [h]eadheld mobile/[c]omputer [d]evice," which also "us[es] the Pi Symbol." (Compl. 6). What is more, according to Plaintiff, the evidence of Musk's infringement is contained within Plaintiff's missing Twitter archive. (*Id.*). According to Plaintiff, his Twitter archive "is worth [t]rillions of [d]ollars," and Musk's actions have caused injuries to Plaintiff's "branding[,] [f]ame, fortunes, opportunities, [r]ecognition, credits, awards, [and] accolades, [f]rom [p]ast, [p]resent, and [p]ossibly the future[.]" (*Id.*).

**B.     Procedural Background**

Plaintiff initiated the instant action on June 24, 2022, when he filed a Complaint against National Twitter Headquarters, Twitter Corporate Office, Billie Eilish, and Universal Music Group. (Dkt. #1). The initial Complaint lodged six claims against those defendants: (i) "[c]opyright [i]nfringement," (ii) "[i]llegally withholding [i]ntellectual properties of the Plaintiff," (iii) "[i]llegal contracts," (iv) "[p]rofiting off of infringed [i]ntellectual properties," (v) "tampering with [e]vidence," and (v) "[l]aundering." (Compl. 2). On October 13, 2022, at Plaintiff's request (Dkt. #6), the Court dismissed Defendants Billie Eilish and Universal Music Group (Dkt. #7) from the action.

On October 17, 2022, Plaintiff successfully served the Complaint on Twitter, the only remaining Defendant. (Dkt. #14-15). Soon after, on November 7, 2022, Twitter filed a pre-motion letter requesting leave to file a motion to dismiss Plaintiff's Complaint. (Dkt. #10). Following a pre-motion conference regarding Twitter's anticipated motion to dismiss — and in an effort to resolve the case without further motion practice — Twitter agreed to provide Plaintiff with the full data archive in Twitter's possession for the account @Zay_Cipher "using the only data production tool available to Twitter, the same tool it uses to produce data to law enforcement entities and civil litigants alike." (Dkt. #24 at 2; December 13, 2022 Minute Entry). Twitter would not, however, agree to reinstate Plaintiff's account. (*Id.*).

Hopeful that Twitter's overtures would be sufficient to resolve the dispute, the Court then ordered Plaintiff to file a letter informing the Court whether he still wished to continue with the litigation after receiving the data archive. (Dkt. #25). On January 27, 2023, the Court received Plaintiff's letter. (Dkt. #28). The 34-page submission did not respond directly to the Court's Order; instead, it provided more detail about the merits of Plaintiff's claims. (*See id.*). As such, the Court construed the letter as an indication that Plaintiff wished to continue the litigation. (Dkt. #29).

The Court then set a briefing schedule for Twitter's motion to dismiss. (Dkt. #29). Twitter filed its motion and accompanying papers on March 8, 2023 (Dkt. #43-48); Plaintiff filed his response and accompanying papers on May 1, 2023 (Dkt. #58-59); and Twitter filed its reply on May 19, 2023 (Dkt.

4

#60). On June 12, 2023, Plaintiff filed an "Opposition to Defendant's Reply" without leave of the Court to file a sur-reply (Dkt. #62), as well as a motion "to add Apple Inc. and Meta, Xiam Inc. to this case" (Dkt. #63), and a request for the Court to accept the earlier-filed "Opposition to Defendant's Reply" "if opposition [i]s permitted and necessary or expected" (Dkt. #64). The Court denied Plaintiff's requests, advising the parties that the Court would accept no further briefing on Twitter's motion to dismiss. (Dkt. #65).

Plaintiff thereafter filed three unauthorized submissions: a motion for leave to amend his Complaint (Dkt. #66), a request that the Court "give clarification" on certain matters (Dkt. #68), and a request that the Court "[r]ecognize that [T]witter/[X] [C]orp continues to violate the [P]laintiff's [i]ntellectual property [r]ight[s] … in complete disregard to this case" (Dkt. #69). The Court reminded Plaintiff that it was accepting no further submissions in connection with the pending motion to dismiss and denied Plaintiff's motion for leave to amend. (*See* Dkt. #67, 70). The Court indicated that it would grant Plaintiff leave to amend following its determination of Twitter's motion to dismiss if it thought amendment "would be fruitful." (Dkt. #67).

## DISCUSSION

### A. Applicable Law

Federal Rule of Civil Procedure 8(a)(2), which sets forth the general rules of pleading in the federal system, specifies that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. (8)(a)(2). In *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544

(2007), the Supreme Court elaborated on this requirement, finding that — in determining the adequacy of a complaint upon a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) — a court should (i) take all of its factual allegations (but not legal conclusions) as true and (ii) determine whether it states a "plausible" claim for relief. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). At the motion to dismiss stage, the court's task is to "assess[] the legal feasibility of the complaint," and not to "weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a motion to dismiss under Federal Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

Importantly, when (as here) a plaintiff is proceeding *pro se*, his complaint is "held to [a] less stringent standard[] than formal pleadings drafted by

lawyers." *Boykin* v. *KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Indeed, a district court must actively "interpret [his complaint] 'to raise the strongest arguments that [it] suggest[s].'" *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Unless it is "beyond doubt" that a *pro se* plaintiff may "prove no set of facts in support of his claim[s] which would entitle him to relief," his complaint should not be dismissed. *Thomas & Agnes Carvel Found.* v. *Carvel*, 736 F. Supp. 2d 730, 756 (S.D.N.Y. 2010) (quoting *Leibowitz* v. *Cornell Univ.*, 445 F.3d 586, 590 (2d Cir. 2006)).

**B.     Analysis**

**1.     The Court Dismisses Plaintiff's Copyright Infringement Claim**

Plaintiff's first claim is one arising under federal law, for copyright infringement. (Compl. 2). Courts in this District have held that,

> to withstand a motion to dismiss, a complaint based on copyright infringement must allege: [i] which original works are the subject of the copyright claim; [ii] that the plaintiff owns the copyrights in those works; [iii] that the copyrights have been registered in accordance with the statute; and [iv] by what acts during what time the defendant infringed the copyright.

*BWP Media USA Inc.* v. *Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014) (internal quotations omitted and alteration adopted); *see also Palatkevich* v. *Choupak*, Nos. 12 Civ. 1681 (CM), 12 Civ. 1682 (CM), 2014 WL 1509236, at *6 (S.D.N.Y. Jan. 24, 2014).

Plaintiff clears the first hurdle of this test. Presumably, the "original works" at issue here are (i) unidentified piece(s) of music that Plaintiff posted

7

on Twitter and YouTube (Compl. 5),[3] and (ii) Plaintiff's "PiFace handheld [a]nd [h]eadheld mobile/[c]omputer [d]evice" (*id.* at 6).[4]

The same cannot be said, however, for the second and third hurdles. Plaintiff makes no showing that he owns copyrights in either of these "original works," or that such copyrights were registered in accordance with the federal Copyright Act. To start, the only copyrights Plaintiff claims to own are for "the song Ms. Elish [and] her [b]rother infringed on." (Compl. 6). Plaintiff does not claim to own a copyright for his "PiFace" device. But even for the copyrights he purports to own, Plaintiff provides no evidence supporting his ownership of them or their registration under the applicable law. Indeed, in the hundreds of pages that Plaintiff has submitted in this action (and in support of this motion), there is not a single exhibit reflecting his ownership of any copyright, or of its registration.[5]

---

[3]   The Court recognizes that Plaintiff does not identify the specific songs at issue in his Complaint. However, considering the Court's obligation to liberally construe the pleadings of a *pro se* litigant, the Court assumes their existence. *See, e.g.*, *Douglas* v. *Abrams Child. Books*, No. 13 Civ. 2613 (VSB), 2014 WL 12909009, at *2 (S.D.N.Y. Sept. 26, 2014) ("Consistent with the liberal reading of a *pro se* plaintiff's complaint, courts have considered submissions and allegations outside of the four corners of a *pro se* plaintiff's complaint when evaluating the complaint on a motion to dismiss.").

[4]   The Court takes no position as to the eligibility of either of these "original works" for a copyright under the federal Copyright Act.

[5]   The Court acknowledges that, in his letter dated January 27, 2023, Plaintiff did provide evidence of provisional patent applications that he had filed with the United States Patent and Trademark Office in January 2021, including for his "Pi Face" device. (*See* Dkt. #28 at 3, 11, 30, 32). Such applications, however, were "regarded as abandoned [in January 2022,] 12 months after the filing date of such application[s]," in light of Plaintiff's presumed failure to convert them into non-provisional applications. 35 U.S.C. § 111(b)(5). Accordingly, there is no evidence indicating that Plaintiff currently owns any patents, and Plaintiff therefore does not have standing to sue under the federal Patent Act. *See id.* § 271; *Bobcar Media, LLC* v. *Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 381 (S.D.N.Y. 2018).

And even assuming, *arguendo*, that Plaintiff had satisfied the first three prongs of the *BWP Media* test, Plaintiff fails to surmount the fourth, as he has not pleaded any facts demonstrating that Twitter — the only Defendant in this case — took any actions amounting to infringement of his alleged copyrights. Instead, Plaintiff claims that music released by former Defendants Eilish and Universal Music Group copied the "[r]hythm, [s]tyle, harmonie, tone, [and] melodie" of his own music. (Compl. 5). Plaintiff also claims that non-party Elon Musk copied his "PiFace" device by "using the Pi symbol" in Musk's "model Pi phone." (*Id.* at 6).[6] Nowhere, however, does Plaintiff describe any infringing actions taken by Twitter. Accordingly, Plaintiff's copyright infringement claim against Twitter must be dismissed.

### 2. The Court Dismisses Plaintiff's Claim for Illegal Withholding of Intellectual Property

Plaintiff's second claim is for the "[i]llegal withholding of [i]ntellectual propert[y]." (Compl. 2). Because "illegal withholding of intellectual property" is not a cause of action, Plaintiff's second claim may be dismissed "on this basis alone." *Douglas* v. *Abrams Child. Books*, No. 13 Civ. 2613 (VSB), 2014 WL 12909009, at *7 (S.D.N.Y. Sept. 26, 2014). The Court is, however, mindful of its obligation to interpret Plaintiff's complaint "to raise the strongest arguments

---

[6] Plaintiff is presumably referring to the Tesla Model Pi Smartphone, a product that was rumored to be under development by Tesla, a different company owned by Musk, since at least 2020. *See* Martyn Casserly, "Tesla Model Pi Smartphone: Why Elon Probably Isn't Making a Phone," TECH ADVISOR (December 2, 2022, 2:14 PM), https://www.techadvisor.com/article/746185/tesla-model-pi-smartphone-everything-you-need-to-know.html. Regardless, neither Musk nor Tesla is a party to this litigation, and Plaintiff has not adequately alleged that such a product was ever actually developed or sold.

9

that [it] suggest[s]."  *McPherson*, 174 F.3d at 280 (quoting *Burgos*, 14 F.3d at 790).  Because the Court understands Plaintiff to be arguing that Twitter has unlawfully assumed control of the ideas expressed by Plaintiff across his defunct Twitter archive, the Court construes Plaintiff's claim as a state-law claim for conversion.  Even so, that claim does not survive a motion to dismiss.

Under New York law, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito* v. *N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49 (2006).[7]  Importantly, "[a]lthough courts continue to allow certain intangible property to be subject to conversion, the Second Circuit has not yet ruled on whether these rights should extend to intellectual property[.]"  *Harris* v. *Coleman*, 863 F. Supp. 2d 336, 344 (S.D.N.Y. 2012).  Lower courts, however, have indicated that intangible property, including intellectual property, may be

---

[7]   "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs."  *Rothstein* v. *City of New York*, No. 09 Civ. 5888 (LTS) (HBP), 2011 WL 3296205, at *5 n.8 (S.D.N.Y. June 15, 2011) (quoting *Rocchigiani* v. *World Boxing Council, Inc.*, 131 F. Supp. 2d 527, 530 n.5 (S.D.N.Y. 2001)), *report and recommendation adopted*, 2011 WL 3273473 (S.D.N.Y. July 29, 2011); *accord Fieger* v. *Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  However, "[w]here the parties agree that New York law controls, this is sufficient to establish choice of law."  *Fed. Ins. Co.* v. *Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Here, Defendants' briefing assumes that New York law controls Plaintiff's potential state-law claims (*see, e.g.*, Def. Br. 8-9), and Plaintiff does not proffer any alternative state's substantive law (*see generally* Pl. Opp.).  Courts have held that "such implied consent is sufficient to establish choice of law."  *Brown* v. *Twitter, Automattic Inc.*, No. 19 Civ. 6328 (KPF), 2021 WL 3887611, at *7 (S.D.N.Y. Aug. 31, 2021) (quoting *MIG, Inc.* v. *Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010)).  The Court will accordingly analyze Plaintiff's state-law claims under New York law.

subject to conversion in the form of a "tangible expression," *Matzan* v. *Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (1st Dep't 1987), or "when the converted property is a document into which intangible rights have merged," *Ancile Inv. Co.* v. *Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011).

The Court fails to see how Plaintiff's tweets, as alleged, could amount to the "tangible expression" of intellectual property or a "document into which intangible rights have merged." That is because the mere articulation of an idea, without more, is insufficient to serve as a "tangible expression." *Matzan*, 521 N.Y.S.2d at 918 ("There is no protected interest in an idea, but only in the tangible expression or implementation of that idea."); *compare Arcadia Biosciences, Inc.* v. *Vilmorin & Cie*, 356 F. Supp. 3d 379, 387, 403-04 (S.D.N.Y. 2019) (finding PowerPoint presentations discussing biotech company's idea for a kind of genetically modified wheat not subject to conversion), *with Astroworks, Inc.* v. *Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (finding a "copyrighted and trademarked website" subject to conversion), *and Harris*, 863 F. Supp. 2d at 344-45 (finding the United States Patent and Trademark Office's record of a given patent subject to conversion). That is, Plaintiff's simple act of tweeting does not create any "thing" on which to base his conversion claim. *Rushing* v. *Nexpress Sols., Inc.*, No. 05 Civ. 6243 (CJS), 2009 WL 104199, at *6 (W.D.N.Y. Jan. 14, 2009) ("Since his claim is that Defendants converted his patentable idea, not a tangible expression of that idea … [Plaintiff's] claim does not lie."). Accordingly, the claim cannot stand.

### 3. The Court Dismisses Plaintiff's Illegal Contracts Claim

Plaintiff's third claim is for "[i]llegal contracts." (Compl. 2). As Twitter rightly notes in its opening brief, "'[i]llegal contract' is an affirmative defense, not a cause of action." (Def. Br. 9 (citing *Unger* v. *Leviton*, 787 N.Y.S.2d 625, 628 (2004) (explaining that the illegality defense "would not come into play unless the plaintiff's [breach of contract] claim were proved"))). However, as above, the Court interprets Plaintiff's Complaint to make the strongest arguments it suggests. Because the Court understands Plaintiff to argue, in substance, that Plaintiff was injured by Twitter in the course of their contractual relationship — but does not claim that Twitter breached a specific provision of the contract between them — the Court finds Plaintiff's third claim nearest to a state-law claim for breach of the covenant of good faith and fair dealing.

"[I]mplicit in every contract is a covenant of good faith and fair dealing ... which encompasses any promises that a reasonable promisee would understand to be included." *N.Y. Univ.* v. *Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (internal citation omitted). The "'intent and reasonable expectations' of [the] parties ... fix the boundaries of the covenant of good faith and fair dealing, provided that those expectations are consistent with the express terms of the contract." *ARI & Co.* v. *Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting *Cross & Cross Props., Ltd.* v. *Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989)). The duty is breached when a party to a contract "do[es] anything that has the effect of destroying or injuring the right of the other party

12

to receive the fruits of the contract" or "violate[s] the [other] party's presumed intentions of reasonable expectations." *Spinelli* v. *Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (internal quotations omitted and alteration adopted).

On the facts before it, the Court cannot conclude that Plaintiff has a plausible claim for breach of the implied covenant of good faith and fair dealing. The agreement between Twitter and Plaintiff is embodied in Twitter's Terms of Service (the "Terms"), to which Plaintiff agreed to abide by when he created his account. (*See* Def. Br. 1-2).[8] Importantly, the Terms clearly disclaim any responsibility for Twitter's failure to store or transmit content. (*See id.* at 8). A reasonable user, therefore, would contemplate the possibility of one's tweets, for whatever reason, becoming inaccessible; nowhere do the Terms suggest an intention on Twitter's part to retain all users' data for transmission to them anywhere, at any time, and in any format. Further, Twitter's efforts to provide Plaintiff with a copy of his Twitter archive (even if unsuccessful) evince significant good faith. (*See id.* at 3 n.6 ("Twitter has provided Plaintiff a copy of his archive twice — once, before Plaintiff sued; and a second time in December 2022, in a voluntary (but unsuccessful) effort to

---

[8]   The Court finds that the Terms (Dkt. #46-2, 46-3) are incorporated by reference in the Complaint. As the Court earlier noted, "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Further, as Twitter explains in its Request for Judicial Notice in Support of its Motion to Dismiss, "[t]o the extent Plaintiff attempts to state a cause of action arising from the Terms, the plausibility of that claim relies heavily on the Terms and their effect, rendering them integral to his Complaint." (Dkt. #46 at 4).

13

resolve this matter without further litigation.")).  Thus, even when construed as legally cognizable, Plaintiff's third claim must be dismissed.

### 4. The Court Dismisses Plaintiff's Claim for "Profiting Off of Infringed Intellectual Properties"

Plaintiff's fourth claim is for "[p]rofiting off of infringed [i]ntellectual properties." (Compl. 2).  This claim may also be dismissed on the basis that it is not a recognized cause of action.  *Douglas*, 2014 WL 12909009, at *7.  Because the Court understands Plaintiff to be arguing that — in substance — Twitter is making money from the ideas Plaintiff expressed in his tweets, the Court construes his claim as a state-law claim for misappropriation of ideas.  Even so construed, Plaintiff's claim does not survive a motion to dismiss.

New York courts "afford protection to persons who ... have disclosed their ideas to others in the expectation that the idea would be used, and the use compensated."  *Vantage Point, Inc.* v. *Parker Brothers, Inc.*, 529 F. Supp. 1204, 1216 (E.D.N.Y. 1981), *aff'd sub nom. Vantage Point, Inc.* v. *Milton Bradley*, 697 F.2d 301 (2d Cir. 1982).  For an idea to be susceptible to a claim of misappropriation, there must be "[i] a legal relationship between the parties in the form of a fiduciary relationship, an express contract, implied contract, or quasi contract; and [ii] an idea that is novel and concrete."  *Town & Country Linen Corp.* v. *Ingenious Designs LLC*, 436 F. Supp. 3d 653, 667 (S.D.N.Y. 2020) (quoting *Schroeder* v. *Pinterest Inc.*, 17 N.Y.S.3d 678, 692 (1st Dep't 2015)), *order vacated in part on reconsideration*, No. 18 Civ. 5075 (LGS), 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020).

14

Critically, however, "[a] plaintiff cannot recover for misappropriation of ideas unless the ideas are actually used by a defendant." *McGhan* v. *Ebersol*, 608 F. Supp. 277, 286 (S.D.N.Y. 1985).  Here, notwithstanding the novelty or concreteness of Plaintiff's ideas, Plaintiff presents no facts evidencing Twitter's actual use of them or any money made from such use.  Accordingly, a misappropriation claim cannot lie.

Construing Plaintiff's claim as one for unjust enrichment is similarly unavailing.  "To state a claim for unjust enrichment under New York law, a plaintiff must allege that: '[i] the defendant was enriched, [ii] at the expense of the plaintiff, and [iii] that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" *Agerbrink* v. *Model Serv. LLC*, 155 F. Supp. 3d 448, 458 (S.D.N.Y. 2016) (quoting *Clifford R. Gray, Inc.* v. *LeChase Construction Services, LLC*, 819 N.Y.S.2d 182, 187 (3d Dep't 2006)).  Again, because Plaintiff presents no facts evidencing Twitter's actual use of his ideas or any money made from such use, Plaintiff cannot demonstrate that Twitter was enriched.  Accordingly, an unjust enrichment claim also cannot lie.

### 5. The Court Dismisses Plaintiff's Claims for "Tampering with Evidence" and "Laundering"

Both tampering with evidence and laundering are crimes, not civil causes of action.  *See, e.g.*, N.Y. Penal Law § 215.40 (categorizing tampering with physical evidence as a class E felony); 18 U.S.C. § 1956 (listing criminal and civil penalties for money laundering).  It is a longstanding principle of our legal system that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with

15

prosecution." *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 619 (1973).  In accordance with this principle, private citizens generally cannot enforce criminal law.  *See, e.g.*, *Forkin* v. *Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 308 (E.D.N.Y. 2019).  Accordingly, Plaintiff's fifth and sixth claims must be dismissed.

### 6. The Court Denies Plaintiff Leave to Amend

Having determined that Plaintiff's Complaint must be dismissed, the Court now returns to its earlier commitment to consider whether "amendment [of the Complaint] would be fruitful," and concludes that it would not.  (Dkt. #67).  While the Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is proper [for the Court] to deny leave to replead where … amendment would be futile," *Hunt* v. *Alliance N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).  *See also Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[W]e do not find that the complaint[,] liberally read, suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe."

(internal quotation marks and citations omitted)).  Accordingly, the Court denies Plaintiff leave to amend his Complaint.[9]

As an initial matter, the Court is mindful that Twitter's immunity under the Communications Decency Act ("CDA") may protect Twitter from a swath of civil claims.  Section 230(c)(1) of the CDA provides that "[n]o provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The CDA's grant of immunity applies if a defendant "[i] is a provider or user of an interactive computer service, [ii] the claim is based on information provided by another information content provider[,] and [iii] the claim would treat the defendant as the publisher or speaker of that information."  *Fed. Trade Comm'n* v. *LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (internal quotation marks omitted and alteration adopted).

Twitter unequivocally satisfies the first factor.  Section 230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Courts have repeatedly concluded

---

[9] The Court acknowledges that Plaintiff's submissions in this matter — and in particular, his opposition to Twitter's motion to dismiss — reference a litany of his additional claims beyond those enumerated in his Complaint.  (*See generally* Pl. Opp.; *see also* Def. Reply 1 ("[In his opposition], Plaintiff makes mysterious assertions about, for example, 'The Whistleblower' and 'the private social network Club'; lodges serious criminal allegations against multiple non-parties, including rape and physical assault; details a long list of the various awards and honors Twitter purportedly has caused him to lose, including The MacArthur Foundation Genius Grant; and baselessly lists more than 100 new causes of action.")).  While "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) (internal quotation marks omitted), for the sake of finality, the Court had broadly considered such claims in its decision to deny leave to amend.

that message boards and social media sites qualify as "interactive computer services." *See, e.g.*, *Herrick* v. *Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019) (summary order); *see also Knight First Amend. Inst. at Columbia Univ.* v. *Trump*, 953 F.3d 216, 222 n.2 (2d Cir. 2020); *Force* v. *Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019); *Ratermann* v. *Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 666 (S.D.N.Y. 2023).

What is more, Plaintiff is undoubtedly an "information content provider." The statute defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plaintiff, of course, is responsible for the creation of his tweets, which were circulated via Twitter. *See, e.g.*, *Mezey* v. *Twitter, Inc.*, No. 18 Civ. 21069 (KMM), 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) ("Plaintiff is the information content provider as he created the relevant content associated with his Twitter account[.]"); *Morton* v. *Twitter, Inc.*, No. 20 Civ. 10434 (GW), 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Every decision th[is] Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage.").

Accordingly, Section 230 would appear to immunize Twitter from all claims that would treat it as the publisher or speaker of information provided by Plaintiff: that is, all "lawsuits seeking to hold [Twitter] liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to

publish, withdraw, postpone[,] or alter [the] content" provided by Plaintiff. *LeadClick Media, LLC*, 838 F.3d at 174 (internal quotation marks omitted). This presumably includes all actions arising from Twitter's alteration or removal of Plaintiff's content. *See, e.g., id.*; *Murawski* v. *Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Deciding whether or not to remove content or deciding when to remove content falls squarely within Ask.com's exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity."); *see also Barnes* v. *Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ("We have indicated that publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.").[10] As such, Twitter's CDA immunity strikes at the heart of Plaintiff's grievances with Twitter.

Further, Plaintiff's submissions to date have left the Court with little confidence in Plaintiff's ability to successfully replead a claim against Twitter. Plaintiff's briefs have consistently referenced a myriad of potential claims against many potential defendants. *See Neitzke* v. *Williams*, 490 U.S. 319, 325 (1989) (identifying "inarguable legal conclusion[s]" insufficient to state a claim); *Frein* v. *Pelosi*, No. 22-1063, 2023 WL 2530453, at *1 (2d Cir. Mar. 16, 2023) (summary order) ("[A] complaint w[ill] be subject to dismissal if it assert[s]

---

[10] The Court notes that the Second Circuit has not explicitly ruled as to whether Section 230 immunity applies "where [a] plaintiff[] s[eeks] to hold a defendant liable for removing content as opposed to permitting content to exist on its platform." *Domen* v. *Vimeo, Inc.*, No. 20-616, 2021 WL 4352312, at *3 (2d Cir. Sept. 24, 2021) (summary order) ("Because Appellants' complaint fails to plausibly plead a claim for discrimination under the state statutes there is no need to consider Vimeo's defense that such claims are pre-empted under Section 230."), *cert. denied*, 142 S. Ct. 1371 (2022).

19

claims against a [Defendant] premised on injuries caused by third parties, or on the [Defendant]'s mere knowledge of those injuries."). Distilling Plaintiff's Complaint to just those allegations involving the actions of Twitter, the Court does not believe there is any basis on which a plausible claim against Twitter may be stated. *See Cuoco*, 222 F.3d at 112 ("The problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it."). Accordingly, the Court denies Plaintiff leave to amend his Complaint.

## CONCLUSION

In accordance with the discussion herein, Plaintiff's Complaint is hereby DISMISSED for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), without leave to replead.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:   December 6, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge